**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**VOKAL, INC.,**

                **Plaintiff,**

-vs-                                          Case No. 6:04-cv-254-Orl-31DAB

**NELLY f/k/a Cornell Hayes, Jr. and**
**VOKAL CLOTHING COMPANY L.L.C.,**

                **Defendants.**

_____

# ORDER

This case is before the Court on the Motions for Summary Judgment filed by Defendants Vokal Clothing Company, L.L.C. ("VCC") (Doc. 50) and Nelly f/k/a Cornell Hayes, Jr. ("Nelly") (Doc. 51), as well as the responses to those motions filed by the Plaintiff, Vokal, Inc. (Doc. 71, 76).

**I.**    **Background and Procedural History**

Vokal, Inc. is a Florida corporation that holds the intellectual property rights relating to a rhythm and blues group formed in 1991 by the principals of the corporation, Camaron Caines ("Caines") and James Tyrone Wilson ("Wilson"). In 1993, Caines and Wilson changed the group's name to Vokal.[1] (Doc. 71-1 at 2). Caines and Wilson say that Vokal has continued to record and perform music since that date. (Doc. 71-1 at 5).

---

[1] To distinguish between these similarly named entities, this opinion will refer to the band as "Vokal" or simply "the band" and to the corporation as "Vokal, Inc." or "the Plaintiff".

Defendant VCC is a Missouri limited liability company that designs and, through licensees, manufactures and sells clothing under the brand name "Vokal." VCC is affiliated with well-known hiphop artist (and co-defendant) Nelly, who has an ownership interest in the company through an entity know as Sound Unseen Ltd. (Doc. 51 at 5). Nelly promotes VCC's products by, *inter alia*, wearing them during his concerts and personal appearances. VCC was formed in 1997 and adopted "Vokal" as the name of its clothing line that same year. (Doc. 50 at 3).

On February 26, 2004, Vokal, Inc. filed suit against VCC and Nelly, alleging that their use of the trade name "Vokal" violated the Lanham Act, Florida common law regarding the use of trademarks, Florida trademark law, Florida's Deceptive and Unfair Trade Practices Act, and Florida common law regarding unfair competition. (Doc. 1). Subsequently, the parties entered into a stipulation to drop one of the Lanham Act counts as premature. (Doc. 71 at 3). VCC now moves for summary judgment on the grounds that Vokal, Inc. does not have a protectible interest in the "Vokal" mark and cannot prove a likelihood of confusion between its mark and that of VCC. (Doc. 50). Nelly moves for summary judgment on the grounds that, regardless of whether any infringement occurred, he cannot be held personally liable. (Doc. 51).

**II.     Standard of Review**

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).[2]

**III.   Legal Analysis**

Trademarks are "any word, name, symbol, or device, or any combination thereof [used] to identify and distinguish [one's] goods ... from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127. Similarly, service marks are "any word, name, symbol, or device, or any combination thereof [used] to identify and distinguish [one's] services ... from the services of others and to indicate the source of the services." 15 U.S.C. § 1127. Because

---

[2] All decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent on courts within the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

the term at issue in this case is used by VCC as a trademark and by Vokal, Inc. as a service mark, this opinion will refer to it simply as a "mark." The distinction between trademarks and service marks has little legal significance in the instant case, as the infringement analysis is the same under both standards and courts treat the two terms as interchangeable in adjudicating infringement claims. *Frehling Enterprises, Inc. v. International Select Group, Inc.*, 192 F.3d 1330, 1334 n.1 (11th Cir. 1999).

Vokal, Inc. does not hold a federal registration for the "Vokal" mark. (Doc. 71 at 4). However, the Lanham Act protects qualifying unregistered marks. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). The same principles that qualify a mark for registration under the Lanham Act are generally applicable to determine whether an unregistered mark is entitled to protection under that act. *Id.* To prove infringement under the Lanham Act, a plaintiff must prove (1) that the defendant used a term in commerce (2) in connection with its services (3) which is likely to be confused with the term (4) in which the plaintiff possesses the right to designate its services.[3] *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1521-22 (11th Cir. 1991). VCC does not contest the first two elements here. With respect to the latter two elements, a district court should determine whether the plaintiff has a protectible interest in the term at issue before considering whether a likelihood of confusion exists. *American Television and Communications Corp. v. American Communications and Television, Inc.*, 810 F.2d 1546, 1548 (11th Cir. 1987).

---

[3]In this case, the remaining Lanham Act claim serves as a "measuring stick" for the other claims asserted by Vokal, Inc., all of which revolve around the "Vokal" mark. If the federal claim fails due to Vokal, Inc. having no protectible interest in the mark, the remaining claims must also fail. *See Investacorp, Inc.* at 1521.

A business does not necessarily obtain a protectible interest in a mark simply by using it to represent its services. *Investacorp* at 1522. A business will obtain rights to the mark upon first use only if the mark is "inherently distinctive". *Id.* If the mark is not inherently distinctive, a business obtains rights in it only after it acquires a secondary meaning. *Id.*

Courts have traditionally divided marks into four categories, in order of increasing strength: (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful. *American Television* at 1548. The *American Television* court described the distinctions between these categories:

> A generic name suggests the basic nature of the article or service. Most courts hold that a generic term is incapable of achieving trade name protection. A descriptive term identifies a characteristic or quality of an article or service, and may become a protectible trade name only if it acquires a secondary meaning. The distinction between descriptive and generic terms is one of degree. A suggestive term suggests, rather than describes, a characteristic of the goods or services and requires an effort of the imagination by the consumer in order to be understood as descriptive; it requires no proof of secondary meaning to be protectible. An arbitrary or fanciful name bears no relationship to the product or service and is also protectible without proof of secondary meaning.

*Id.* at 1548-49 (internal citations omitted). As an example, the term "liquor store" used in connection with the sale of liquor would be a generic mark. *Frehling Enterprises*, 192 F.3d at 1335. The term "vision center," used to denote a place where glasses are sold, would be a descriptive mark, as it describes a characteristic or quality of the service provided. *Id.*[4] "Penguin" would be a suggestive mark when applied to refrigerators, as it requires an effort of imagination by

---

[4] *See also Investacorp*, 931 F.2d at 1524 (finding that the two formatives "invest" and "corp" literally conveyed to the observer that the named entity was in the business of investing in corporations, without the observer having to exercise his or imagination, thus rendering "Investacorp" merely descriptive).

the consumer in order to be understood as descriptive. *Id.* Finally, "Sun Bank," when applied to banking services, bears no relationship to the product offered and therefore would be an arbitrary mark. *Id.*[5] The distinctiveness categorization to be given a mark is a question of fact. *Investacorp* at 1523.

The concept of descriptiveness "must be construed rather broadly." *Vision Center v. Opticks, Inc.*, 596 F.2d 111, 116 (5th Cir. 1979). "Whenever a word or phrase naturally directs attention to the qualities, characteristics, effect or purpose of the product or service, it is descriptive and cannot be claimed as an exclusive trade name." *Id.* The extent to which third parties use a mark is probative evidence of descriptiveness. *Frehling Enterprises* at 1336 (11th Cir. 1999).[6]

VCC contends that Vokal, Inc.'s mark as used by the band does not rise to the level of a suggestive mark in that it "merely describes the basic nature of the goods being offered under the mark, namely music and singing." (Doc. 50 at 8). Indeed, as VCC notes, Caines admitted during his deposition that he chose the word "Vokal" *because* it called to mind a quality of his group's music:

---

[5] Similarly, the term "brilliant" could be descriptive when used in connection with a shop that sells diamonds, suggestive when denominating a furniture polish company, and arbitrary when used in connection with an apple-sauce cannery. *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 524 (4th Cir. 2002) (citing 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 11:64 (4th ed. 2001)).

[6] VCC has produced evidence of other groups using the name "Vokal" — namely, the Maria Vokal Ensemble in Sweden, a hip-hop group called "Vokal Intimacy," and a singing group called "Vokal Cords." VCC did not offer evidence of musical groups employing the word "vocal". The Court finds that the evidence on this score does not weigh in either party's favor.

> I wanted to come up with a name that pertains to music that was strong. [T]he first thing that came to my head was 'vocal,' which you sing, which means to sing. So I ... put a 'K' to make it 'Vokal,' make, you know, what we do — it makes it strong, you know. It has a strong meaning to it by putting a 'K'.

Doc. 50-1 at 39.[7]

In the face of the foregoing, the Plaintiff argues that "Vokal" is a suggestive mark in that it requires an effort of the imagination before the consumer would understand it as descriptive of the band's music. (Doc. 76 at 4). "When viewing the mark at issue ... it would be virtually impossible for anyone to immediately make a determination as to what the actual product or service is, let alone whether it is a product or service they are dealing with." (Doc. 76 at 5). This argument fails both legally and factually. Legally, to qualify as descriptive, a mark need not describe the "actual" goods or services being offered. Rather it is enough if it identifies a characteristic or quality of those services or goods. *American Television* at 1548. And factually, it is inarguable that the term "vocal" describes a characteristic of the band's music — particularly in light of the admission by Caines that he specifically intended it to do just that. Even in the absence of such an admission, the Court may take judicial notice of the generally accepted English usage of the term "vocal," in regard to music, as something relating to or performed by singing.

The fact that the Vokal, Inc. mark is spelled differently than the widely understood term "vocal" does not make it a suggestive or arbitrary mark. "Vokal" is insufficiently distinguishable from "vocal" to warrant categorization as a stronger mark. *See Standard Paint Co. v. Trinidad*

---

[7] In an effort to denigrate the mark, VCC points out that Caines admits coming up with "Vokal" after only a couple of minutes of reflection. (Doc. 50 at 9). The Court does not find that the amount of time spent creating a mark has any bearing on its strength or protectibility, and VCC offers no support for such a proposition.

*Asphalt Mfg. Co.*, 220 U.S. 446, 458 (1911) (finding plaintiff's trademark of "Ruberoid" insufficiently distinguishable from industry tradename of "rubberoid" and stating, "the word, therefore, is descriptive, not indicative of the origin or the ownership of the goods; and, being of that quality, we cannot admit that it loses such quality and becomes arbitrary by being misspelled") *and Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 170 F.Supp.2d 828, (N.D.Ill. 2001) (Easterbrook, Circuit J., sitting by designation) (finding that mark "BOHN," as a homophone of "bone," could not be a suggestive, arbitrary, or fanciful mark when used in connection with the sale of acrylic bone combs), *overruled on other grounds*, 372 F.3d 913 (7th Cir. 2004), *and Miller Brewing Co. v. G. Heileman Brewing Co., Inc.*, 561 F.2d 75 (7th Cir. 1977) (holding that because "light" is a generic or common descriptive word when applied to beer, neither that word nor a phonetic equivalent such as "lite" may be appropriated as a trademark for beer). "Vokal," used in connection with musical services and products, is merely descriptive. No reasonable jury could find otherwise.

The Plaintiff's reliance on the fact that it holds a Florida trademark registration for "Vokal" is misplaced. It is true, as the Plaintiff argues, that when the federal Patent and Trademark Office issues a certificate of registration without requiring a showing of secondary meaning, it provides *prima facie* evidence that the mark is suggestive or, if descriptive, has acquired secondary meaning. *U.S. Search*, 300 F.3d at 524. However, Vokal, Inc. holds a Florida registration, not a federal one, and Vokal, Inc. has not even attempted to show that a registration under Florida law is accorded the same weight. The Court's research has uncovered no support for this proposition, which runs counter to the apparently minimal evidentiary effect given to the mere fact of registration under Florida law. *See*, *e.g.*, *Abner's Beef House Corp. v. Abner's Int'l, Inc.*, 227

So.2d 865, 867 (Fla. 1969) (stating that prior registration under Florida law "is only prima facie evidence of the exclusive ownership of a particular service mark"). *See also* 22 Am. Jur. Proof of Facts 3d 69 (stating that, "for the most part, state review of [trademark] applications is extremely informal, not conducted by attorneys, and does not follow the type of process prescribed by the federal Patent and Trademark Office").

Because it is merely descriptive, the Plaintiff's mark is not protectible unless it acquired a secondary meaning prior to its first use by VCC. *Investacorp*, 931 F.2d 1519. Secondary meaning is the connection in the consumer's mind between the mark and the provider of the service. *Id.* at 1525. The Plaintiff bears the burden of sustaining "a high degree of proof" in establishing a secondary meaning for a descriptive term, and this requisite high degree of proof must be considered by the court when ruling on a motion for summary judgment. *Id.* In the absence of consumer survey evidence (which Vokal, Inc. does not offer), four factors can be considered in determining whether a particular mark has acquired a secondary meaning:

> (1) [T]he length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's ... business; and (4) the extent to which the public actually identifies the name with the plaintiff's [service].

*Id.*

In its memorandum in opposition to VCC's motion, Vokal, Inc. offers no evidence — or even an argument — that its mark has ever acquired a secondary meaning. Instead, the Plaintiff simply assumes that a material question of fact exists as to whether its mark is suggestive. (Doc. 76 at 10). Because the Plaintiff has failed to raise the issue, a full-blown analysis on this point is

not warranted. Nonetheless, a review of the record demonstrates that Vokal, Inc. could not sustain a high burden of proof on this point at trial.

In regard to secondary meaning, the Plaintiff has testimony from its principals that the band began using the mark in 1993, and little else. The band has performed and sold its recordings sporadically at best. Neither the band nor its principals have ever reported a profit to the IRS. There is no record that the band ever paid for any advertising or promotion, and aside from some T-shirts and hats imprinted with the band's name, there is no indication of serious efforts to promote a connection between the band and its name in the mind of the public. As for public identification, Caines and Wilson say that they received calls from friends inquiring whether their band was affiliated with VCC or Nelly. Even if this hearsay evidence were admissible, it would not demonstrate that the public – as opposed to some friends of the band members – identifies "Vokal" with the band's music.

No genuine issue of material fact exists as to whether Vokal, Inc. possesses a protectible interest in the mark "Vokal". Accordingly, there is no need to assess the likelihood of confusion between Vokal, Inc.'s mark and that of VCC. *Gift of Learning Foundation, Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003).

**IV.     Conclusion**

Because Vokal, Inc. cannot establish at trial that it has a protectible interest in its mark, VCC is entitled to summary judgment on the Lanham Act claim. Because the Plaintiff's other claims require the same showing, VCC is entitled to summary judgment as to them as well. *Gift of Learning Foundation* at 802. The same reasoning compels an award of summary judgment as to the (identical) claims brought by Vokal, Inc. against Nelly. Accordingly, it is

**ORDERED** that the Motions for Summary Judgment filed by Defendants Vokal Clothing Company, L.L.C. (Doc. 50) and Nelly f/k/a Cornell Hayes, Jr. (Doc. 51) are **GRANTED**. The case is removed from the November 2005 trial docket. The Clerk is directed to enter judgment in favor of the Defendants and then close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on September 20, 2005.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party